UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO MAURICE GAITHER,

    Petitioner,                                           Civil No. 04-CV-74158-DT
                                                               HONORABLE PAUL D. BORMAN
v.                                                            UNITED STATES DISTRICT JUDGE

THOMAS BIRKETT,

    Respondent,
_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, AND (2) A CERTIFICATE OF APPEALABILITY**

Antonio Maurice Gaither, ("petitioner"), presently confined at the Standish Maximum Correctional Facility in Standish, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Laura Kathleen Sutton, petitioner challenges his conviction for assault with intent to commit murder, M.C.L.A. 750.83; M.S.A. 28.278, felony-firearm, M.C.L.A. 750.227b; M.S.A. 28.424(2); and being a fourth felony habitual offender, M.C.L.A. 769.12; M.S.A. 28.1084. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

**I. BACKGROUND**

Petitioner was convicted of the above offenses following a jury trial in the Berrien County Circuit Court.

On the evening of March 27, 2001, Robert "Frog" Sharp was at the home of Mia Parham and Tyree Glass. Also present were Gregory Traylor and Kori Wright, with

whom Sharp hung out as well as Shaquila Campbell, Alicia Ventree, and several others. Sharp and his friends did not associate with petitioner, who was also known as "Tony Horn", or with petitioner's friends.

Petitioner hung out with his brother, Eric Gaither, and Joshuan Wilson. A man named Wesley Smith had associated with petitioner and his friends before he was shot to death by Charles Jennings, Traylor's cousin and a friend of Sharp's.

On the night of the shooting, Sharp left Parham and Glass's house to use a payphone. When he returned, he parked his car in front of the house and exited the vehicle. A light pole near the house lit up the entire area. As Sharp was walking towards the house, he heard someone say that he was "sick of this shit." Sharp looked up and saw petitioner come out of an alley. Petitioner was about ten to twelve feet away and was cocking a Mac 10, a machine gun-like weapon. Sharp asked petitioner, "man what are you talking about ?" Petitioner walked up to Sharp and shot him twice in the stomach. Sharp fell to the ground and tried to play dead, but petitioner stood behind him and kept shooting, before running off.

Inside the house, Traylor, Campbell, Ventress, Wright, and the others heard gun shots. Everybody dropped to the floor. When the shots stopped, Ventress got up and locked the door. Then several more shots were heard.

Sharp crawled to the steps of the house, and hollered for help. Traylor went outside and found Sharp, who told Traylor he had been shot. When Traylor asked who had shot him, Sharp replied, "Tony Horn." Traylor and several other persons carried

2

Sharp into the house, where he again said several times that "Tony" had shot him.

Detective Blake McKinney was dispatched to the scene at about 9 p.m. McKinney asked Sharp several times who had shot him, and each time Sharp indicated that "Tony Horn" had shot him.

Sharp was taken to the hospital, where he immediately underwent surgery. His treating physician indicated that Sharp suffered at least four, and maybe up to six, bullet wounds. Sharp almost died during surgery. Sharp sustained a liver injury, perforation of the stomach in two locations, and a major kidney injury, which caused paralysis of Sharp's left lower extremity.

Five fired 9mm. Luger cartridge cases were recovered from the crime scene. All five cartridge cases came from the same weapon and could have come from a Tech 9 or Tech 10 semi-automatic or some other type of weapon.

Sharp testified that he was 100 % sure that it was petitioner who shot him. He was unsure why, except that Wesley Smith was shot by Traylor's cousin. Sharp also indicated that he had a sexual relationship with petitioner's girlfriend Theresa Sipe in the past. Sharp also testified that three months prior to the shooting, petitioner's group had jumped on Marcus Carter, one of Sharp's friends.

Petitioner testified that he did not know Sharp and denied shooting him. Petitioner testified that his cousin Larry Hooks dropped him off at the house of his girlfriend, Theresa Sipe, shortly before 8:30 p.m. on the day of the shooting. The house was about 2 ½ to 3 miles away from the site of the shooting. Theresa's brother, Terry,

was at the house. Petitioner took a shower and was still there when Theresa arrived around 9 or 9:15 p.m. Petitioner remained at Theresa's house until the next morning. When he spoke to his mother that morning, she told him the police were looking for him. Petitioner testified that hew was unaware of Sharp's relationship with Theresa and was never angry at Sharp for that.

Larry Hooks confirmed that he dropped petitioner off at Theresa Sipe's house at around 8:15 p.m. on the night of the shooting. Terry Sipe also testified that petitioner arrived at around that time and was there until Terry left the house at 11:20 p.m.

Theresa Sipe testified that petitioner was in her room when she arrived home at about 9:10 or 9:15 p.m. that night. The next day, when the police questioned Theresa, she told them she had not seen petitioner for a couple of days. She confirmed that she was seeing Sharp in about March 1999 and started seeing petitioner in May 1999. Theresa Sipe testified that she never told petitioner about her prior relationship with Sharp.

Petitioner's conviction was affirmed on appeal. *People v. Gaither,* 230886 (Mich.Ct.App. December 10, 2002); *lv. den.* 469 Mich. 861; 666 N.W. 2d 670 (2003).

Petitioner now seeks habeas relief on the following grounds:

I. Petitioner is entitled to a Writ of Habeas Corpus as he was denied his Sixth Amendment right to the effective assistance of counsel at trial.

II. The state court prosecutor's repeated misconduct was so egregious that it wholly undermined the trial, rendered the verdict unreliable, and deprived petitioner of due process and an impartial trial by jury as guaranteed by the Fifth and Fourteenth Amendments to the federal Constitution.

III. Petitioner must be granted habeas corpus relief because he was denied a

fair trial and due process by the state trial court allowing jurors to ask questions and/or by failing to permit defense counsel to reopen voir dire.

IV. Petitioner must be granted habeas corpus relief because the evidence was insufficient to allow a reasonable jury to find guilt beyond a reasonable doubt.

## II.  STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

5

### III. DISCUSSION

**A.  Claim # 1.  The ineffective assistance of counsel claims.**

Petitioner first claims that he was deprived of the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*

Petitioner first claims that counsel was ineffective for failing to seek discovery to determine whether any tests had been made on the bullet shell casings that were recovered at the crime scene and if so, what the results of the tests were.  Petitioner further claims that counsel was ineffective for failing to determine whether any fingerprint testing had been performed in this case.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Reedus v. Stegall,* 197

6

F. Supp. 2d 767, 782 (E.D. Mich. 2001). In this case, petitioner merely speculates that there would have been favorable ballistics evidence to support his defense. The mere possibility that the results of a ballistics test would have lead to petitioner's acquittal is insufficient to show prejudice, for purposes of establishing an ineffective assistance of counsel claim. *See e.g. Williams v. Carter,* 85 F. Supp. 2d 837, 840 (N.D. Ill. 1999). Likewise, trial counsel was not ineffective for failing to investigate the prosecution's fingerprint evidence in this case, in the absence of any showing that counsel would have discovered exculpatory evidence which would have lead to a different result in petitioner's trial. *See United States v. Aquino,* 54 Fed. Appx. 505, 506-07 (2nd Cir. 2002).

Petitioner next contends that trial counsel was ineffective for failing to move to exclude testimony about the shooting of Wesley Smith by Charles Jennings, as well as to object to the prosecution's elicitation and use of various street names or aliases. Petitioner further claims that counsel was ineffective for failing to object to the prosecutor's innuendos about petitioner's involvement with a gang.

The Michigan Court of Appeals held that trial counsel was not ineffective for failing to object to the shooting of Smith by Jennings, because such evidence was admissible under Michigan law to show motive. *People v. Gaither,* Slip. Op. at * 2. The failure to object to admissible evidence is not ineffective assistance of counsel. *Anderson v. Goeke*, 44 F. 3d 675, 680 (8th Cir. 1995). Petitioner's trial counsel was not deficient for failing to object to the questions about Wesley Smith's shooting, where Michigan case law did not forbid this line of questioning. *See Pursell v. Horn,* 187 F. Supp. 2d

7

260, 357-58 (W.D. Pa. 2002).

The Michigan Court of Appeals likewise ruled that counsel was not ineffective for failing to object to the prosecutor's elicitation of street names or aliases of various witnesses, because without such evidence, the jury would have been unable to determine the issues before it. In particular, the Michigan Court of Appeals noted that petitioner was known and identified as "Tony Horn." The Michigan Court of Appeals indicated that a person's alias can be admitted to establish identity. *People v. Gaither,* Slip. Op. at * 2. In this case, trial counsel was not ineffective for failing to object to the prosecutor's references to petitioner's alias at trial, in light of the fact that several witnesses knew and identified petitioner by his assumed name. *See e.g. Roberts v. Singletary,* 794 F. Supp. 1106, 1126-27 (S.D. Fla. 1992).

Finally, the Michigan Court of Appeals rejected petitioner's claim that counsel was ineffective for failing to object to the prosecutor's innuendo about petitioner being a member of a street gang, because the trial record did not support petitioner's claim that the prosecutor ever attempted to elicit evidence that petitioner was a member of a gang. *People v. Gaither,* Slip. Op. at * 2. Because the prosecutor never introduced any evidence of petitioner's membership in a gang at his trial, counsel was not ineffective for failing to object to the prosecutor's line of questions. *See Pfau v. Ault,* 409 F. 3d 933, 940 (8th Cir. 2005)(rejecting similar claim involving ineffective assistance of appellate counsel).

Petitioner lastly claims that counsel was ineffective for calling Theresa Sipe as an

alibi witness, because this allowed the prosecutor to question her about her prior sexual relationship with Sharp and thus establish a possible motive for the shooting. The Michigan Court of Appeals rejected this claim, finding that petitioner had failed to overcome the presumption that it was sound trial strategy to call Sipe as an alibi witness. *People v. Gaither,* Slip. Op. at * 3.

In the present case, Sharp had already testified that he had a prior sexual relationship with Theresa Sipe, thereby injecting evidence of a possible motive for the shooting. Sipe's testimony about her prior relationship with Sharp was therefore cumulative of his testimony. More importantly, Sipe testified that she did not tell petitioner about her prior relationship with Sharp, buttressing petitioner's own testimony that he was unaware that Sipe and Sharp had been romantically involved. Because Sipe's testimony was not damaging to petitioner's case, counsel was not ineffective for calling her as a witness. *See United States v. Chandler,* 950 F. Supp. 1545, 1561 (N.D. Ala. 1996).

Petitioner was not deprived of the effective assistance of counsel.

### B. Claim # 2. Prosecutorial misconduct claims.

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct. Petitioner first claims that the prosecutor improperly vouched for the victim. Petitioner secondly claims that the prosecutor questioned witnesses about other acts of violence to imply that a gang related feud existed. Thirdly, petitioner claims that the prosecutor improperly asked petitioner about why he failed to turn

himself into the police when he discovered that he was a suspect in the shooting. Respondent contends that these claims are procedurally defaulted.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved these prosecutorial misconduct claims. The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's

10

claims does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claim for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). Petitioner's claims are procedurally defaulted.

     Petitioner contends that any procedural default should be excused because of trial counsel's ineffectiveness in failing to object to the various instances of prosecutorial misconduct. For ineffective assistance of counsel to constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Petitioner did raise a claim with the state courts involving trial counsel's ineffectiveness for failing to object to the prosecutor's questions and arguments which implied that the shooting grew out of a gang-related feud. However, petitioner did not raise a claim in the state courts regarding counsel's failure to object to the prosecutor improperly vouching for the victim or failing to object to the improper questions to petitioner about his failure to turn himself in to the police. Because petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to object to these two instances of prosecutorial misconduct, the alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to his first and third prosecutorial misconduct claims. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding

11

these two prosecutorial misconduct claims. *Smith*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider these two prosecutorial misconduct claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim (Claim # IV) is insufficient to invoke the actual innocence exception to the procedural default doctrine. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's first and third prosecutorial misconduct claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002). This portion of petitioner's prosecutorial misconduct claim is procedurally barred.

Petitioner, however, did raise a claim with the state courts that counsel was ineffective for failing to object to the prosecutor's questions about other acts of violence in an attempt to raise an inference that petitioner's shooting of Sharp was gang related. Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of this defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's

12

role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

As mentioned when addressing petitioner's ineffective assistance of counsel claim (*supra*), the Michigan Court of Appeals indicated that evidence of the shooting of Wesley Smith by Charles Jennings was relevant to establish a motive for the shooting in this case. The Michigan Court of Appeals further ruled that the prosecutor never elicited evidence of testimony that petitioner was a member of a gang.

In the present case, even if the prosecutor's questions and comments about other acts of violence could have been construed as raising an innuendo that petitioner was involved in a gang, such remarks did not have a tendency to be misleading and prejudicial in light of petitioner's response, to a question posed by one of the jurors, that he was not a member of a gang. *See Toler v. McGinnis,* 23 Fed. Appx. 259, 270 (6th Cir. 2001). Petitioner is not entitled to habeas relief on his second claim.

**C. Claim # 3. The juror questioning claim.**

In his third claim, petitioner alleges that the trial court erred in permitting the

13

jurors to ask the witnesses questions in this case. Petitioner further claims that the trial court erred in refusing to re-open *voir dire* in the middle of the trial, on the ground that some of the jurors' proposed questions reflected bias on their part towards petitioner.

Although federal courts discourage questions by jurors in federal criminal trials, there are no cases which indicate that questions by jurors implicate a specific constitutional guarantee. Therefore, juror questions are reviewed on habeas review for a violation of due process. *See Wheeler v. Jones,* 59 Fed. Appx. 23, 30 (6th Cir. 2003)(internal citation omitted). In this case, the trial court's decision to ask juror questions did not violate petitioner's right to a fundamentally fair trial, therefore, petitioner is not entitled to a writ of habeas corpus on this claim. *Id.*

Petitioner also contends that the trial court should have permitted defense counsel to re-open *voir dire*, because some of the juror questions reflected bias on their part. Petitioner specifically complains about several proposed juror questions that they wanted to pose to petitioner about why he consulted an attorney if he was innocent, whether his counsel harbored a fugitive by not turning petitioner in to the police, and why petitioner did not turn himself in to the police. The Michigan Court of Appeals rejected this portion of petitioner's claim, finding that the trial court's cautionary instructions to the jury cured any misconceptions which the jurors had about the law. *People v. Gaither,* Slip. Op. at * 5.

Federal courts should accord state trial courts particularly wide discretion with regard to the propriety of *voir dire* questions. *Daniels v. Burke*, 83 F. 3d 760, 766 (6th

14

Cir. 1996). Even on direct review of federal criminal cases, federal appellate courts have accorded wide latitude to federal district courts regarding the decision to conduct mid-trial *voir dire* and have affirmed a district court's failure to do so when such mid-trial *voir dire* was unnecessary. *See e.g. United States v. Yousef,* 327 F. 3d 56, 119-20 (2nd Cir. 2003).

In the present case, the trial court gave the jurors a cautionary instruction in which the jurors were advised that an attorney has no duty to advise his client to turn himself in to the police nor does the attorney have a duty to contact the police to have his client arrested. The trial court further advised the jurors that a person has a constitutional right to consult an attorney and the jurors should not consider the fact that petitioner consulted an attorney as evidence of his guilt. (T. II, pp. 317-18). The cautionary instruction in this case adequately addressed any juror misconceptions in this case. Therefore, the trial court's failure to re-open *voir dire* did not deprive petitioner of a fair trial.

**D. Claim # 4. The sufficiency of evidence claim.**

Petitioner lastly claims that there was insufficient evidence to convict him of assault with intent to murder.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of

15

insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *See Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002). The scope of review in a federal habeas proceeding to the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *See Terry v. Bock,* 208 F. Supp. 2d 780, 794 (E.D. Mich. 2002). A conviction may rest on circumstantial evidence and a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence. *Dell v. Straub,* 194 F. Supp. 2d at 647. A conviction may be based upon circumstantial evidence as well as inferences based upon the evidence. *Id.*

Under Michigan law, the elements of assault with intent to commit murder in Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder. *See Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001)(*citing to People v. Hoffman*, 225 Mich. App. 103, 111; 570 N.W. 2d 146 (1997)). A conviction for assault with intent to commit murder must be premised upon a defendant's specific intent to kill. *Id.* The intent to kill, for purposes of the crime of assault with intent to commit murder, need not be proved by direct, positive, or independent evidence, and the trier of fact may draw reasonable inferences from the facts and evidence in determining the existence of an intent to kill. *See People v. Taylor*, 422 Mich. 554, 567-568; 375 N.W. 2d 1 (1985). The use of a lethal weapon will support an

16

inference of an intent to kill. *Steele,* 157 F. Supp. 2d at 740; *People v. Ray*, 56 Mich. App. 610, 615; 224 N.W. 2d 735 (1974).

In this case, the Michigan Court of Appeals concluded that there was sufficient evidence to support petitioner's conviction for assault with intent to commit murder. The victim testified that petitioner pointed his firearm at him and shot him twice in the stomach. While the victim lay on the ground pretending to be dead, petitioner shot him several more times from behind. The victim sustained five gunshot wounds. *People v. Gaither,* Slip. Op. at * 5. When viewed in a light most favorable to the prosecution, the evidence in this case was sufficient to support a finding by the jury that petitioner possessed the requisite specific intent to kill. Therefore, the Michigan Court of Appeals' decision rejecting petitioner's sufficiency of evidence claim was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. *Steele,* 157 F. Supp. 2d at 740. Petitioner is not entitled to habeas relief on his second claim.

### IV. **CONCLUSION**

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were

adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson,* 219 F. Supp. 2d at 885.

## V.   ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

_____

s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 31, 2006

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S.

Mail on May 31, 2006.

                                                             s/Jonie Parker
                                                             Case Manager